Filed 11/26/13  Umpqua Bank v. Circle H CA3

## NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sutter)

----

| | |
|---|---|
| UMPQUA BANK, | |
| Plaintiff and Respondent, | C069830 |
| v. | (Super. Ct. No. CVCS102006) |
| CIRCLE H, LLC, et al., | |
| Defendants and Appellants. | |

Following a court trial of its action to recover monies due under a commercial loan agreement and written guaranties, plaintiff Umpqua Bank (the Bank) obtained judgment against the three guarantors of Circle H, LLC's loan obligation to the Bank:  Brian C. Hamman, Kory H. Hamman, and Howard B. Hamman (the Hammans).

The Hammans contend the trial court erred in failing to "apply the sham guaranty defense" and erred in excluding the testimony of one witness as to the value of the collateral.  But they have elected to proceed on a clerk's transcript (Cal. Rules of Court, rule 8.121), and the appellate record does not include a reporter's transcript of the trial.

1

(*Allen v. Toten* (1985) 172 Cal.App.3d 1079, 1082-1083; *Krueger v. Bank of America* (1983) 145 Cal.App.3d 204, 207.)  On the face of the limited record, the Hammans have failed to establish trial court error.  Accordingly, we affirm the judgment.

BACKGROUND

This is an appeal on the judgment roll because the Hammans did not provide a reporter's transcript of the court trial.  "In a judgment roll appeal based on a clerk's transcript, every presumption is in favor of the validity of the judgment and all facts consistent with its validity will be presumed to have existed.  The sufficiency of the evidence is not open to review.  The trial court's findings of fact and conclusions of law are presumed to be supported by substantial evidence and are binding on the appellate court, unless reversible error appears on the record."  (*Bond v. Pulsar Video Productions* (1996) 50 Cal.App.4th 918, 924.)  In light of this standard of review, we take our factual summary chiefly from the exhibits introduced at trial.  (See *ibid*.)

In July 2004, Circle H, a limited liability company, entered into an agreement with Feather River State Bank[1] to borrow $1.67 million (the 2004 loan).[2]  The purpose of the loan was to purchase an apartment building in Yuba City.  On behalf of Circle H, each of the Hammans signed the 2004 loan agreement, promissory note, and deed of trust in favor of the Bank.  The Hammans each also executed a "Commercial Guaranty" in favor of the Bank, in which each individually promised unconditionally to satisfy Circle H's indebtedness to the Bank, which indebtedness was defined as the amount of the note, all

[1]     Umpqua Bank is the successor by merger to Feather River State Bank.  We refer to both entities as the Bank.

[2]     For the purposes of this recitation, the amounts are approximate.

2

interest, all late charges, all loan fees and charges, and all collection costs and expenses relating to the note or any collateral for the note (the 2004 guaranties).

In April 2005, Circle H applied for and received another commercial loan from the Bank in the amount of $600,000 (the 2005 loan). In connection with that loan, each of the Hammans executed a "Commercial Guaranty" promising unconditionally to repay Circle H's indebtedness to the Bank (the 2005 guaranties). Like the 2004 guaranties, the 2005 guaranties contain waiver provisions by which each guarantor waives any right to require the Bank to proceed first against Circle H or against the collateral. But in another respect, the terms of the 2005 guaranties were much broader than the 2004 guaranties: the amount guaranteed was "without limitation," and each of the Hammans promised to repay any and all of Circle H's indebtedness to the Bank "now existing or hereinafter incurred or created."

The 2005 loan was repaid as agreed.

The 2004 loan was not. It was twice modified by written agreement, in 2007 and 2009. Neither modification purported to affect the guaranties signed by the Hammans.

In 2010, the 2004 loan was in default. Circle H and the Hammans asked the Bank to restructure the 2004 loan, but the parties failed to reach an agreement.

The Bank then filed the instant complaint against Circle H and the Hammans, seeking (among others) damages from the Hammans for their breach of the 2004 and 2005 guaranties. Shortly thereafter, the Bank also began a non-judicial foreclosure on the collateral for the 2004 loan, although the sale had not occurred by the time of trial.

All the defendants answered the complaint and cross-complained against the Bank for breach of the implied covenant of good faith and fair dealing for its alleged failure to negotiate in good faith regarding the 2004 loan.

Court trial of this matter spanned three days. There is no reporter's transcript of the trial in the record on appeal, but the minutes of the trial proceedings indicate the Hammans testified and more than 200 pages of exhibits were introduced at trial.

At the close of trial, the trial court found the Bank entitled to judgment in its favor against all defendants in the amount of $1.73 million.

DISCUSSION

I

***Standard of Review***

It is the burden of the party challenging a judgment to provide an adequate record to assess claims of error. (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1140-1141.) When an appeal is "on the judgment roll" (*Allen v. Toten, supra*, 172 Cal.App.3d at pp. 1082-1083), we must conclusively presume evidence was presented that is sufficient to support the court's findings. (*Ehrler v. Ehrler* (1981) 126 Cal.App.3d 147, 154; *Bond v. Pulsar Video Productions, supra,* 50 Cal.App.4th at p. 924.) Our review is limited to determining whether any error "appears on the face of the record." (*National Secretarial Service, Inc. v. Froehlich* (1989) 210 Cal.App.3d 510, 521; Cal. Rules of Court, rule 8.163.) Absent a showing to the contrary, we must presume the trial court's judgment is correct (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564) and we must adopt all inferences in favor of the judgment, unless the record expressly contradicts them. (See *Brewer v. Simpson* (1960) 53 Cal.2d 567, 583.)

II

***The Hammans Have Not Shown the Trial Court Erred
in Rejecting a "Sham Guaranty" Defense***

Under California law, "[a] surety or guarantor is one who promises to answer for the debt, default, or miscarriage of another, or hypothecates property as security

4

therefor." (Civ. Code, § 2787.) That is precisely what the Hammans here promised to do by signing the commercial guaranties: they unconditionally promised to pay all of Circle H's indebtedness to the Bank. A lender is entitled to judgment on a breach of guaranty claim based upon evidence that (1) there is a valid guaranty, (2) the borrower has defaulted, and (3) the guarantor failed to perform under the guaranty. (*Gray1 CPB, LLC v. Kolokotronis* (2011) 202 Cal.App.4th 480, 491; *Torrey Pines Bank v. Superior Court* (1989) 216 Cal.App.3d 813, 819.)

The Hammans assert on appeal that their guaranties are invalid, unenforceable "sham guaranties" because the Bank looked to them individually -- not Circle H -- as the primary obligors. Because a "guarantor is one who promises to answer for the debt, default, or miscarriage *of another*" (Civ. Code, § 2787), a guaranty is a sham when the guarantors are also the primary obligors on the loan. (See *River Bank Am. v. Diller* (1995) 38 Cal.App.4th 1400, 1420.) If the guarantor is actually the principal obligor, the guaranty is a sham, and the guarantor is entitled to the unwaivable protection of the antideficiency statutes, which prohibit a deficiency judgment after non-judicial foreclosure of real property under a power of sale. (See *id*. at p. 1420.)

Whether a person is "a true guarantor or a principal obligor in guarantor's guise" is a question of fact. (*River Bank Am. v. Diller, supra,* 38 Cal.App.4th at p. 1422.)

Absent a reporter's transcript of the trial, of course, we must defer to the trial court's determination of what findings of fact are required and its determination of whether the evidence supports those findings. The Hammans' claim the trial court erred in "fail[ing] to apply" the sham guaranty defense implies such a defense was raised at trial. But nothing in the appellate record indicates the Hammans raised this defense in the court trial: there is no transcript of the trial proceedings; the minutes of trial do not disclose the nature of defenses (if any) raised by the Hammans; no trial brief or motions

5

in limine filed by the Hammans (if any) are in the appellate record; and the trial brief and motions in limine filed by the Bank suggest it did not anticipate a sham guaranty defense. Absent a reporter's transcript of the trial, we presume official duties have been regularly performed (Evid. Code, § 664), and this presumption applies to the actions of trial judges. (*People v. Duran* (2002) 97 Cal.App.4th 1448, 1462, fn. 5; *Olivia v. Suglio* (1956) 139 Cal.App.2d 7, 9 ["If the invalidity does not appear on the face of the record, it will be presumed that what ought to have been done was not only done but rightly done"].) Under these circumstances, we presume the trial court considered all properly raised defenses supported by the evidence.

Even if a sham guaranty defense had been raised at trial, nothing on the face of the record on appeal compels the conclusion the court erred in rejecting it. (See *National Secretarial Service, Inc. v. Froehlich, supra,* 210 Cal.App.3d at p. 521.) While the record supports the conclusion the three guarantors were partners in Circle H, it does not compel the conclusion that "the supposed guarantors [are] nothing more than the principal obligors under another name." (*Torrey Pines Bank v. Hoffman* (1991) 231 Cal.App.3d 308, 320.)

If, rather, the Hammans did not raise the sham guaranty defense at trial, they may not raise it now, as new theories of defense may not be raised for the first time on appeal (*Bardis v. Oates* (2004) 119 Cal.App.4th 1, 13–14, fn. 6) when the defense theory raises questions of fact. (See *River Bank Am. v. Diller, supra,* 38 Cal.App.4th at p. 1422; cf. *Fort Bragg Unified School Dist. v. Colonial American Casualty and Surety Co*. (2011) 194 Cal.App.4th 891, 907 [considering defense raised for the first time on appeal because it poses "pure question of law"].)

### *The Hammans Have Not Shown the Trial Court Abused its Discretion in Excluding the Testimony of an Expert Witness*

The Bank moved in limine to exclude the testimony of Scott Hamm as an expert to testify as to the value of the real property collateral. The Hammans purported to disclose and designate Hamm as an expert by way of "supplemental" expert witness disclosure, on the grounds the applicable statute permits designation of a supplemental expert witness only when the party supplementing its expert witness list has not previously retained an expert to testify on that subject. (Code Civ. Proc., § 2034.280, subd. (a).)[3] The Hammans had previously designated Kory H. Hamman as an expert to testify as to the value of the real property collateral.

The minutes of the trial proceedings indicate the court excluded Scott Hamm from testifying as an expert "for failure to disclose [him] as an expert."

On appeal, the Hammans claim the court's decision on this point was error because, although they had *designated* Kory H. Hamman as a valuation expert on a previous expert witness list, they had not *retained* him, presumably because he is also a party. We find no reversible error.

The Code of Civil Procedure provides for a simultaneous exchange of expert witnesses. (§ 2034.210.) The exchange is designed to permit the parties to select experts

---

[3]     Undesignated statutory references are to the Code of Civil Procedure. Section 2034.280, subdivision (a), states: "Within 20 days after the exchange described in Section 2034.260, any party who engaged in the exchange may submit a supplemental expert witness list containing the name and address of any experts who will express an opinion on a subject to be covered by an expert designated by an adverse party to the exchange, if the party supplementing an expert witness list has not previously retained an expert to testify on that subject."

who can respond to opposing experts in a particular subject area. (*Bonds v. Roy* (1999) 20 Cal.4th 140, 146-147.)  To achieve that goal, the parties may submit a supplemental expert witness list "of any experts who will express an opinion on a subject to be covered by an expert designated by an adverse party," but only "if the party supplementing an expert witness list has not previously retained an expert to testify on that subject." (§ 2034.280, subd. (a).)  A party may not use a supplemental designation to substitute a new expert to testify on the same subject as a previously-designated expert. (*Basham v. Babcock* (1996) 44 Cal.App.4th 1717, 1723.)

A trial court's determination on the admissibility of expert testimony is reviewed for an abuse of discretion. (*Summers v. A. L. Gilbert Co*. (1999) 69 Cal.App.4th 1155, 1168.)

Here, the Hammans have not shown the trial court abused its discretion in refusing to allow the expert testimony of Scott Hamm.  First, without a reporter's transcript, we cannot evaluate the reason for the court's decision, and we presume the trial court properly exercised its discretion in excluding Hamm's testimony. (See *Olivia v. Suglio, supra,* 139 Cal.App.2d at p. 9.)  Second, on its face, we cannot say the trial court's decision was erroneous.  In the initial exchange of expert witness lists, the Hammans designated Kory H. Hamman as an expert who would testify as to the value of the real property collateral.  They later attempted to designate a different expert witness on the same topic.  This maneuver appears intended to defeat the statutory requirement for the parties to simultaneously exchange expert witness designations.  The trial court would not have abused its discretion to have concluded the Hammans belatedly sought to augment their witness list with an additional valuation expert. (See *Fairfax v. Lords* (2006) 138 Cal.App.4th 1019, 1026-1027.)  The Hammans have cited no authority for the

8

proposition Kory H. Hamman's status as a party relieved the Hammans of their obligation to simultaneously exchange witness names, and we are aware of none.

DISPOSITION

The judgment is affirmed. Umpqua Bank is awarded its costs on appeal. (Cal. Rules of Court, rule 8.278(a)(2).)

HOCH , J.

We concur:

RAYE , P. J.

MURRAY , J.

9