Filed 12/29/14  P. v. Shazier CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H035423 |
| Plaintiff and Respondent, | (Santa Clara County Super. Ct. No. 210813) |
| v. | |
| DARIEL SHAZIER, | |
| Defendant and Appellant. | |

Defendant Dariel Shazier has appealed his involuntary civil commitment order adjudging him a sexually violent predator (SVP) under the Sexually Violent Predators Act (SVPA or Act) two times.  (Welf. & Inst. Code, § 6600 et seq.)  In both appeals, we reversed this commitment based on prosecutorial misconduct by the Santa Clara County District Attorney's Office.

This case was tried in the Santa Clara County Superior Court three separate times.  The first trial resulted in a hung jury.  We reversed the judgment in defendant's second trial, because the prosecutor committed prejudicial misconduct during the trial.  (*People v. Shazier* (2006) 139 Cal.App.4th 294, review granted Aug, 30, 2006, S144419.)[1]

---

[1]  The California Supreme Court granted a petition for review in *People v. Shazier*, *supra*, 139 Cal.App.4th 294 pending a decision in *People v. Lopez* (2008) 42 Cal.4th 960, another prosecutorial misconduct case.  Following the court ruling in *People v. Lopez*, *supra*, the court dismissed the petition for review in *People v. Shazier, supra*.

During the third trial in this case, the prosecutor told the jury in his closing argument that if they were to find the petition not true, they would be subject to ignominy within their community.  The prosecutor also told the jury that it was likely that defendant, who he described as a "prolific child molester," had other victims who had not reported his crimes, when there was no evidence presented at trial that defendant had committed additional uncharged crimes against unknown victims.  (*People v. Shazier* (2012) Cal.App.4th 520, review granted Apr. 17, 2013, S208398.)

In the present appeal, we reversed the judgment based solely on prosecutorial misconduct that made defendant's trial fundamentally unfair.

The California Supreme Court granted review in this case, and issued an opinion on August 18, 2014.  In it, the court agreed that the prosecutor committed misconduct by asking the jury what their friends and family would think if they returned a finding of "not true."[2]  (*People v. Shazier* (2014) 60 Cal.4th 109, 143.)  The Supreme Court also found the prosecutor committed questionable conduct when he implied to the jury that defendant had other victims who had not reported his crimes.  However, the court found the prosecutor's misconduct and his questionable conduct was harmless, and did not make defendant's trial fundamentally unfair.

The Supreme Court remanded this case to our court, for consideration of defendant's additional arguments in the appeal.[3]  Specifically, the court ordered us to address defendant's argument that his commitment should be reversed because "(1) the trial court improperly told the jury a true finding on the SVP commitment petition would

---

[2]  The opinion notes that the People essentially conceded this point in the Supreme Court, stating: "In her briefs, and again at oral argument, counsel for the People specifically declined to defend the prosecutor's remarks, urging only that they were harmless."  (*People v. Shazier*, *supra*, 60 Cal.4th at p. 144, fn. 16.)

[3]  Because we reversed the judgment based on prosecutorial misconduct, we did not consider defendant's additional arguments on appeal.

not result in a life sentence, (2) Dr. Murphy violated an in limine order by telling the jury defendant had previously been committed to CSH (see fn. 5, *ante*), and (3) the indeterminate commitment provisions of the SVPA violate state and federal guarantees of due process and equal protection and against double jeopardy and ex post facto laws." (*People v. Shazier*, *supra*, 60 Cal.4th at p. 152, fn. 19.)

We are bound by the Supreme Court's decision in this case, and consider defendant's additional arguments below. (*Auto Equity Sales, Inc. v. Superior Court of Santa Clara County* (1962) 57 Cal.2d 450, 455.)

## DISCUSSION[4]

### *Improper Instruction Regarding the Consequences of the Jury's Finding*

Defendant asserts the trial court erred by improperly instructing the jury that a true finding on the petition would not result in a life sentence.

The issue of the consequences of a true finding first arose during defense counsel's direct examination of his witness, Michael Ross, a psychiatric tech who had worked at Atascadero State Hospital where defendant was housed. In response to the question of how he currently felt about defendant, Mr. Ross responded, "I feel like he's a gentleman that served, like 30 years. I don't feel that he should have to spend the rest of his life in jail."

Following an objection by the prosecution and argument outside the presence of the jury, the court provided a curative instruction regarding Mr. Ross's reference to defendant's potential life sentence, stating: "Ladies and gentlemen of the jury, I want to give you an admonition or instruction at this time. During witness Michael Ross's testimony, Mr. Ross suggested in that testimony what the consequences of a true verdict are in a case like this. His statement was, quite simply, wrong under the law. Further,

---

[4] We omit a statement of the facts and case because such statement can be found both in our previous opinion (opinion), as well as the opinion of the Supreme Court. (*People v. Shazier*, *supra*, 60 Cal.4th 109.)

3

you will be instructed that the consequences of your verdict should in no way influence your verdict."

Defendant asserts the court's instruction improperly highlighted the potential consequences of the jury's verdict, "and gave misleading instructions to the jury." However, the court's curative instruction that Mr. Ross was wrong when he said that the consequence of a true finding would be that defendant would "spend the rest of his life in jail," was legally correct. The court properly told the jury that Mr. Ross's statement was incorrect, and the consequences of the outcome should not affect their decision in this case. Here, while Mr. Ross's statement about defendant serving a life sentence upon a true verdict was inadmissible, the court properly gave a curative instruction regarding the inadmissible evidence, and immediately told the jury that it could not consider the consequences of its verdict. This instruction did not improperly highlight the consequences of a true finding. We presume the jury followed the court's instructions, (*People v. Bramit* (2009) 46 Cal.4th 1221, 1247) and find no error in the court's statement.

### Dr. Murphy's Testimony Violated an In limine Order

Defendant argues he was prejudiced by Dr. Murphy's comment that the fact that he had been previously committed to Coalinga State Hospital supported her conclusion that he was at high-risk to reoffend. Dr. Murphy's comment was in direct violation of an in limine order that she not make such reference to the jury. Following her statement, defense counsel objected, and the court struck the remark and instructed the jury as follows: "Ladies and Gentlemen, you are to disregard the last remark. I struck it from the record. And I told you when we first began, if I strike anything, you're to treat it as though you never heard of it. And I'll probably even instruct you on that again at the end of the trial." At the conclusion of the case, the court further instructed the jury as

4

follows:  "If I ordered testimony stricken from the record, you must disregard it and must not consider that testimony for any purpose."

As a result of Dr. Murphy's violation of the in limine order, defendant moved for a mistrial.  The court took the matter under submission, and eventually denied the request.

Defendant asserts that Dr. Murphy's comments regarding his previous stay at Coalinga State Hospital violated the provisions of *People v. Munoz* (2005) 129 Cal.App.4th 421, wherein the court excluded any evidence of prior true SVP findings.

Here, unlike *Munoz*, Dr. Murphy did not mention any prior "true" findings, only mentioning that defendant had been committed to Coalinga State Hospital.  Moreover, unlike *Munoz*, the prosecutor did not imply that because of a previous true finding, the burden was on the defendant to prove that he was no longer mentally disordered and dangerous.

We find no prejudicial error in Dr. Murphy's violation of the in limine order in this case, or the court's refusal to declare a mistrial based on the violation.

### *Double Jeopardy and Ex Post Facto*

Defendant argues the judgment should be reversed because an indeterminate SVP commitment violates the due process, equal protection, ex post facto and double jeopardy provisions of the State and Federal Constitutions.

We note that the issue of whether the SVP law violates the due process, double jeopardy and ex post facto Constitutional provisions, has been considered and decided by the California Supreme Court in *People v. McKee* (2010) 47 Cal.4th 1172 (*McKee I*), and we are bound by that decision.  (*Auto Equity Sales, Inc., supra*, 57 Cal.2d at p. 455.)  We note that defendant only raises these arguments to preserve them for further review.

With regard to defendant's assertion that the indeterminate term imposed under the SVP law violates equal protection, we note that defendant's opening and reply briefs

5

were filed in 2011.[5] At that time, pursuant to *McKee I*, this issue was pending decision by the San Diego County Superior Court, following remand by the Supreme Court for an evidentiary hearing to determine whether the disparate treatment of SVP's is justified. (*McKee I*, 47 Cal.4th at pp. 1208-1209.) On remand, the San Diego Superior Court conducted an evidentiary hearing and ruled that the People had demonstrated a constitutionally sufficient justification for treating SVP's differently from MDO's and NGI's. (*People v. McKee* (2012) 207 Cal.App.4th 1325, 1331 (*McKee II*).) The superior court's order was affirmed by the Fourth Appellate District in *McKee II*. The Supreme Court denied review of *McKee II*.

Ordinarily the opinion of one Court of Appeal is not binding on another Court of Appeal. (9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, § 498, p. 558.) "However, there is a tendency for a Court of Appeal to follow decisions from . . . other districts or divisions." (*Id*. at p. 560.) "Normally, a Court of Appeal will follow prior decisions of . . . other districts or divisions." (9 Witkin, supra, Appeal, § 499, p. 560.) With regard to defendant's argument that the indeterminate term of the SVP law violates equal protection, we are inclined to adhere to the general tendency and follow the Fourth Appellate District's holding in *McKee II*. As a result, an assertion that the SVP law violates equal protection cannot be a basis for reversal of defendant's commitment.

**DISPOSITION**

The judgment is affirmed.

---

[5] No additional briefs have been filed in this appeal following the Supreme Court's remand to this court.

6

_____
RUSHING, P.J.

WE CONCUR:


_____
PREMO, J.


_____
ELIA, J.

7